UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
William G. Wright
Alan P. Fox
CAPEHART & SCATCHARD, P.A.
8000 Midlantic Drive, Suite 300 S
Mt. Laurel, New Jersey 08054
(856) 234-6800
Attorneys for Defendant

| | |
|---|---|
| In Re:<br><br>Brian W. Mead,<br><br>            Debtor | Chapter 7<br><br>Case No.: 21-17470-KCF<br><br>Judge: Mark Edward Hall, U.S.B.J. |
| Bunce D. Atkinson, Trustee for Debtor Estate<br> of Brian Mead.<br>                    Plaintiff,<br><br>        vs.<br><br>Inspira Medical Center, Inc.<br><br>                Defendant. | Adversary No.: 24-01547-MEH |

**DEFENDANT INSPRIA MEDICAL CENTER, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF TRUSTEE'MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S  CROSS-MOTION FOR SUMMARY JUDGMENT**

**THE STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

The standard of review regarding summary judgment is well known and will be summarized briefly. Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ P. 56(a). Genuine issues of material fact refer to "any reasonable disagreement over an outcome- determinative fact."

See In re Energy Future Holdings Corp. 990 F.3d 778,737 (3rd Cir. 2021)(citing Anderson V.
Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S .Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The purpose of a motion for summary judgment is not to weigh the evidence presented
but rather to determine if the evidence warrants adjudication by trial, Anderson, 477 U.S. at 249-
52.  In reviewing the evidence presented, the court must draw all reasonable inferences in the
light most favorable to the nonmoving party. Halsey v Pfeiffer, 750 F.3d 273,287 (3rd Cir. 2014)
To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on
its pleadings, but must demonstrate, through the submission of admissible evidence, that a
factual dispute remains for trial.  In re Bentivegna, 597 B.R. 261, 263-64 (Bankr. E.D. Pa. 2019)

In considering cross-motions for summary judgment, the Court must evaluate the merits
of each motion independently of the other. *See In re Zerbo,* 397 B.R. 642, 647 (Bankr. E.D.N.Y.
2008) (citing *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993);  *In re
Rodriguez,* 50 B.R. 576 (Bankr.E.D.N.Y. 1985) ("[C]ross-motions for summary judgment do not
warrant the court in granting summary judgment unless one of the moving parties is entitled to
judgment as a matter of law upon facts that are not genuinely disputed")). As part of the
independent evaluation of cross-motions for summary judgment, the court must draw all
reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v.
Peters,* 386 F.Supp.2d 495, 497 (S.D.N.Y. 2005); see also *Considine v. Schachter (In re
Schachter),* No. 05-9404, 2007 Bankr. LEXIS 2621, 2007 WL 2238293 (Bankr.S.D.N.Y. Aug. 1,
2007);

## SUMMARY OF TRUSTEE'S ARGUMENT AND INSPIRA'S ARGUMENT

Both parties assert that there are no genuine question of material facts. The Trustee
argues that Inspira lacks a perfected lien in the Beach Haven Property pursuant to R.4:59-1(d)(1).

2

The Trustee argues that the Defendant Inspira Medical Centers, Inc. (the "Hospital" or "Inspira")

failed to exercise "reasonable effort" in good faith to locate personal property owned by the

Debtor in Ocean County, New Jersey prior to a levy of the Judgment on the Beach Haven

Property. The Trustee's position is not supported by credible admissible evidence in the record

and stretches the interpretation of R. 4:59-1(d)(1) beyond logic as explained below.  Essentially,

the Trustee argues that the Hospital should have served written interrogatories and deposed the

Debtor prior to the levy, notwithstanding that the Debtor was not located in the State of New

Jersey, did not reside at the Beach Havnen Property, and was not subject to the court's authority

to compel post-judgment discovery. More importantly, it is undisputed that both the Debtor and

the Trustee acknowledge under oath, that except for possible "insufficient" marital interest by the

Debtor in  personal property located at the Beach Haven Property and "insufficient" bank

accounts which the Hospital located and caused the sheriff to levy upon, the record clearly

reflects the Debtor (a Connecticut resident) did not own personal property located in New Jersey.

All the case law cited by the Trustee involved a judgment debtor located in New Jersey,

subject to the New Jersey Court Rule's enforcement of post judgment discovery. After the

Hospital obtained the Judgment against the Debtor (April 21, 2021)[1], but prior to the Debtor

filing for bankruptcy protection (September 23, 2021)[2], and prior to the sheriff levy against the

Beach Haven Property(August 17, 2021[3]), the Hospital served written discovery on the Debtor

(June 18, 2021)[4] and the debtor's attorney (August 31, 2021 )[5]. The Debtor delayed by refusing

to answer the written discovery before filing for Bankruptcy[6]. Additionally, the Hospital directed

---

[1] See para 12 of Certification of Alan P. Fox, Esq.
[2] See  Notice of Bankruptcy Case Filing -Exhibit4 to Certification of Alan P. Fox, Esq.
[3] See para 24 of Certification of Alan P. Fox, Esq.
[4] See para 14 of Certification of Alan P. Fox, Esq.- copy of transmittal letter and information subpoena
[5] See para 15 of Certification of Alan P. Fox, Esq,
[6] See para 14 of Certification of Alan P. Fox, Esq.

the sheriff to execute on (5) banks located in New Jersey[7], with only one responding with an

account owned by the Debtor[8]  (the motion for turnover of funds was withdrawn due the

automatic stay when the Debtor filed for bankruptcy protection.[9]).

Here, the Hospital served written discovery on the Debtor on or about June 18, 2021,

caused the sheriff to levy on 5 separate banks located in New Jersey, and caused the sheriff to

levy the Judgment on the Beach Haven Property, but did not seek a court order for the sheriff to

sell the Beach Haven Property--an important distinction to the case law relied upon by the

Trustee.

The Trustee seeks for this Court to interpret R.4:59-1(d)(1) in a manner which **would

create a manifestly absurd result.**  Suggesting that "good faith effort," under these

circumstances, required the  Hospital to also serve the Debtor with post-judgment interrogatories

and scheduling a deposition of the Debtor (as suggested by the Trustee) would have a **futile

result** since the record demonstrates: (i) the Debtor was not located in New Jersey and resided in

Connecticut; (ii) the Hospital could not compel the Debtor to comply with discovery under the

New Jersey Court rules as an out-of- state judgment defendant; (iii) the Debtor did not live in the

Beach Haven Property; (iv) Cathleen Mead submitted a sworn statement that most of the

furniture and personal property located at the Beach Haven Property belonged to her and her

children and the Debtor had no interest in such personal property; (v) the Trustee's written

response to Cathleen Mead's objection and certification was that she could remove any personal

property from the Beach Haven Property, without asserting an interest on behalf of the Debtor's

estate.

---

[7] See paras 17(Chase Bank) 18(PNC Bank), 19 (Wells Fargo Bank), 20(TD Bank) and 21 (Truist Bank) of
Certification of Alan P Fox, Esq
[8] Same  reference as  in  foot note 7 above.
[9] See para 29 of Certification of Alan P. Fox, Esq.

Most compelling, based upon the sworn statements in the Debtor's bankruptcy schedules, the Debtor's sworn statements at the 341 meeting, and the Trustee's own admission during his deposition, the record is clear that the Debtor's only personal property located in Ocean County, New Jersey was the possible 50% martial interest in the personal property located at the Beach Haven Property.

Under these unique circumstances, this Court should find that the Hospital has demonstrated through credible evidence in the record that the Hospital exercised "reasonable effort in good faith" to locate personal property in Ocean County, New Jersey pursuant to R. 4:59-1(d)(1) and N.J.S.A.  N.J.S.A.2A:17-1 prior to the levy on the Beach Haven Property. As such, the Hospital has a valid secure lien superior to the Trustee's hypothetical lien under 11 U.S.C. § 544 .

**THERE ARE CREDIBLE FACTS IN THE RECORD TO SUPPORT A FINDING THAT THE HOSPTIAL COMPLIED WITH THE REQUIREMENTS OF R. 4:59-1(D)(1) AND N.J.S.A. 2A:17-1 PRIOR TO THE LEVY ON THE BEACH HAVEN PROPERTY**

Under 11 U.S.C. § 544, "as of the date of filing of the debtor's Chapter 7 petition the trustee holds the status . . . of a hypothetical judicial lien creditor who has levied upon the debtor's property." *In re Italiano,* 66 B.R. 468, 478 (Bankr. D.N.J. 1986). "As such, the trustee's lien could only be defeated by a judgment creditor holding a valid lien who had properly levied." *Id.*

<u>**APPLICABLE STATE LAW**</u>

N.J.S.A.2A:17-17 (Real estate liable to execution) provides, in pertinent  part, that "All real estate shall be liable to levy upon and sold executions to be issued on judgments obtained in any court of record in this State, except the Superior Court, Law Division, Special Civil Part, for the payment and satisfaction  of the debt, damages, sum of money and costs to be recovered…"

5

R. 4:59-1(d) governs the process to execute the enforcement of a judgment which  " states:

> Execution First Made Out of Personal Property; Motion. The execution shall be made out of the judgment debtor's personal property before the judgment-creditor may proceed to sale of the debtor's real property. If the debtor's personal property is insufficient or cannot be located, the judgment creditor shall file a motion, on notice, for an order permitting the sale of the real property. The motion, which shall not be joined with any other application for relief, shall be supported by a certification specifying in detail the actions taken by the judgment creditor to locate and proceed against personal property. . . .

R. 4:59-1(d)(1) by its terms provides a perquisite of exhaustion of personal property and motion practice for the "sale of the debtor's real property".  A practical interpretation of the plain language of R. 4:59-1(d)(12) is that the prerequisite to locate personal property is not required to simply levy on a judgment debtor's real property. By its plain language, the first sentence of R. 4:59-1(d)(1) does not require the Hospital to satisfy the judgment out of personal property if the judgment creditor is not seeking a sale of the debtor's real property. Since Inspira never sought to sell the Beach Haven Property under State law, such prerequisite under R. 4:59(d)(1) is inapplicable. See In re O'Grady, Nos.20-18906, 21-16401,2022 U.S. Dist. Lexis 65721) D.N.J. Apr.8, 2022).

The cases cited by the Trustee primarily address the requirements prior to a sale of realty. "An execution of the sale of realty will not be valid unless the creditor has first sought resort to the debtor's personalty." Pressler & Verniero, *CurrentN.J. Court Rules* , comment 1.2.2 on R. 4:59-1 (2015). "[T]he test is not whether all possible measures to locate personalty have been undertaken, but rather has the judgment creditor exerted 'reasonable efforts' in good faith to locate personal property." *Borromeo v. DiFlorio,* 409 N.J.  Super. 124, 137, 976 A.2d 388 (App. Div. 2009) (citations omitted). Again, the comments to the Rule 4:59-1(d) appear to limit the requirement for locating personal property to the actual sale of the realty. Here the Hospital

caused a levy on the Beach Haven Property without seeking a court order for the execution of the sale of realty.

N.J.S.A. 2A:17-1 addresses the sequence of execution against goods, chattel and real estate:

> In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattels in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same.

The Trustee argues that this statute governs the sale of real property by a judgment creditor should be interpreted to require that the sheriff exhaust personal property within the county before executing on realty. Here, Inspira never filed a motion for an order requiring the sheriff to sell the Beach Haven Property at an execution sale.

By its plan language, N.J.S.A. 2A:17-1 also includes a perquisite for exhaustion of personal property prior to the "sale of the debtor's real property". In such an event, a judgment-creditor must make a good-faith effort to locate the debtor's personal property. _In re Marvaldi_, 99 F. App'x 414, 416 (3d Cir. 2004). " [T]he test is not whether all possible measures to locate personalty have been undertaken, but rather has the judgment creditor exerted `reasonable efforts' in good faith to locate personal property." _Borromeo v. DiFlorio_, 976 A.2d 388, 395 (App. Div. 2009) (quoting _In re Mariano_, 339 B.R. 344, 350 (Bankr. D.N.J 2006)).

Unlike the circumstances this case, most of the cases interpreting N.J.S.A. 2A:17-1 concern judgment debtors residing in New Jersey and involve an execution sale of realty. Not one of the cases cited by the Trustee concerns an out-of-state judgment debtor and only seeking

to levy on real property without seeking a writ for the sale of the realty.  In _Pojanowski v. Loscalzo_, 127 N.J. 240, 242, 603 A.2d 952 (1992),  the N.J. Supreme Court found that the plaintiff had made a good faith effort to discover the debtor's personal property before any execution sale of realty can occur. The Supreme Court was compelled to find that the judgment creditor had made a good faith effort to locate personal property where the record included a statement by the judgment debtor, under oath, that she was insolvent, without any personal property to levy upon. Based on the debtor's deposition, and her testimony that she had no personal property to levy upon, the court concluded that "there is ample justification . . . that plaintiff made a good faith effort to discover [the debtor's] personal property." _Id._ The court added that no suggestion had been made by the debtor that "if an additional inquiry were mounted to find personal assets belonging to her, or if a writ of execution were issued to direct the sheriff to levy on personal assets, a different result would obtain." _Id._

In _Borromeo_, the Appellate Division found that the trial court's determination that the judgment creditor's efforts were reasonably supported by substantial and credible evidence, when the  judgment debtor stated under oath that he had "no bank accounts, physical assets, accounts receivable or automobiles.". Similarly, here, the Debtor testified at the 341 meeting that his automobiles, jewelry, etc. were located at his Connecticut residence, and he did not live at the Beach Haven Property.

In  _In re Mariano_,  339 B.R. 344,  350 (Bankr. D.N.J 2006),  Judge Wizmur held that obtaining an investigative report and issuing an information subpoena constitutes reasonable efforts by  the judgment creditor to locate personalty owned by the debtor. In Mariano, an information subpoena was issued, and was returned under certification. Judge

Wizmur found that the information subpoena issued in this case has the same import as

the deposition testimony taken in *Pojanowski.* Judge Wizmur found that the debtor's

sworn answers to an information subpoena, while somewhat incomplete as to certain

information, such as her social security number and her driver's license number,

nonetheless provided a sufficient basis for the judgment creditor to determine that the

debtor had no personal property upon which to levy. The record in this case includes

sworn testimony by the Debtor and trustee that there was insufficient  or insignificant

personal property located at the Beach Haven Property at the time of the levy on the

Beach Haven Property.

   In this case,  the Debtor is insolvent as set forth in his bankruptcy petition and

Schedules. As discussed in more detail below, the record includes admissible sworn

statements by the Debtor that he did not reside at the Beach Haven Property, that he did

not own personal property in Ocean County, New Jersey, except for possibly a 50%

martial interest in the furnishing and household goods located at the Beach Haven

Property, which his wife, Cathleen Mead, states in her sworn certification mostly belongs

to her and her children and not by the Debtor. The Trustee acknowledges in his deposition

that he did not object to Cathleen Mead's statement and allowed her to remove any

personal property from the Beach Haven Property prior to the Trustee's auction and sale

of the Beach Haven Property.  Moreover, the Trustee states in his deposition that he did

not assert any interest in the personal property at the Beach Haven Property because the

value was insufficient to justify the administrative expense to do so[10].    R. 4:59-1(d)(1)

provides that a judgment creditor, upon filing a motion, is entitled to sell the realty where

---

[10] P38 L22 to P39, L 2. Transcript of Trustee's deposition -Exhibit A to Certification of Alan P. Fox, Esq.

there is admissible evidence that no personal property or "insufficient" personal property located in the county were the property is located in New Jersey. Here, the Trustee acknowledges, under oath, that the possible value of the debtor's marital interest in the personal property at the Bach Haven Property was "insufficient" to cover the Trustee's administrative claims.  Accordingly, such value would also be insufficient to satisfy the $703,125.00 Judgment.   The Trustee does not suggest that if the Hospital had deposed the Debtor, additional personal property would have been discovered.

   *In re Italiano,* 66 B.R. 468, 478 (Bankr.N.J.1986)  Judge Gambardella invalidated the levy where the judgment creditor knew of the debtor's personal assets, including two automobiles, a boat, insurance policies and jewelry, but failed to specifically delineate the personalty for the sheriff, who was directed to levy on personal and real property at the same time. 66 B.R. at 478-79.  As mentioned above, the record in this case establishes that the Debtors' automobiles, guns, and jewelry were located at the Debtor's Connecticut residence and not at the Beach Haven Property.

   The central theme in all the cases mentioned above is that when the record contains a sworn statement by the judgment debtor that he/she owns no personal property located in New Jersey to levy upon, the Courts have found that the judgment creditor made the required "reasonable efforts in good faith" to locate the judgment defendant's personal property  to satisfy the  requirement under N.J.S.A. 2A:17-1.

   The circumstances in this case are distinguishable from the circumstances in the case law relied upon by the Trustee.  Here, the critical facts this Court should focus on when determining

whether the Hospital exercised "a reasonable effort" in good faith to locate the Debtor's personal

property in New Jersey prior to the levy on the Beach Haven Property are as follows:

(i)    the debtor, Brian Mead, was a resident of the State of Connecticut and did

not reside in New Jersey,[11] and, as such, was not subject to the state

court's authority to compel post-judgment discovery;

(ii)   the Debtor owned real property located at 6 East 17th Street in Beach

Haven, New Jersey (the "Beach Haven Property") [12] intended to be a

vacation home or investment property;[13]

(iii)   On August 11, 2021, the Debtor filed his certification, under oath, in the

state court action in support of a motion to vacate the default entered by

Inspira wherein he states that he has been separated from his wife,

Cathleen Mead for about three years, and that he does not live at the

Beach Haven Property[14];

(iv)   On or about June 18, 2021, counsel for the Hospital served the Debtor

with an information subpoena[15] and sent a copy to the Debtor's attorney

on August 31,2021[16]; however, the Debtor and his attorney refused to

answer the information subpoena served on the Debtor prior to filing for

bankruptcy protection[17];

---

[11] See P11, L3- Transcript of Brian Mead testimony at 341 meeting held on 11/22/2011 conducted by the Trustee( referred to hereafter as "341 T.")
[12] See page 28, L 7-25 of 341 T.

[13] See P. 23, L25 to .P.24, L. 1 in 341 T.
[14] See para 23 and Exhibit M attached to Certification of Alan P. Fox, Esq.
[15] See para 14 of Certification of Alan P. Fox, Esq.
[16] See para 15 of Certification of Alan P. Fox, Esq.
[17] See para 14 and 15 of Certification of Alan P. Fox, Esq.

(v)     The Superior Court of New Jersey lacks personal jurisdiction to compel an out-of-state judgment debtor (such as Brian Mead) to answer post-judgment written discovery or attend a post- judgment deposition;

(vi)    The Bankruptcy schedules filed by the Debtor[18], under oath, confirmed that the Debtor is insolvent and personal property located in New Jersey was limited to a possible marital interest in furnishing and household goods located at the Beach Haven Property;

(vii)   The Debtor's two shot guns[19], his jewelry valued at $500[20], a Subaru which he drives and a Cadillac driven by his wife are all located at the Connecticut residence[21];

(viii)  The Debtor testified, under oath, at the 341 meeting[22]  that he had no personal property located in New Jersey, except for possible marital interest in furnishing and household goods located at the Beach Haven Property;

(ix)    On February 28, 2022 , Cathleen Mead filed an objection to Trustee's proposed the auction and sale of the Beach Haven Property.[23] Attached as Exhibit A to the objection is Cathleen Mead's certification wherein she states, under oath:

        a.  She is married to Brian Mead, the debtor;

---

[18] See para 5and Exhibit A to Certification of Alan P. Fox, Es; Exhibit
[19] P52, L9-10  341T.
[20] P52, L17-22 341T.
[21] P49, L2- 15 342 T.
[22] See Exhibit A to Certification of Alan P. Fox; Copy of transcript of 341 meeting attached as Exhibit D to Trustee's Depo Transcript; t
[23] See Exhibit A to certification of Alan P. Fox- copy of Cathleen Mead's objection is exhibit 8 to Trustee Depo Transcript

b.   Martial assets were used to buy the Beach Haven Property

c.   In paragraph 7, She states:

"The Beach Haven Property is fully furnished and outfitted for the beach. It contains among other things, personal items (photos and knickknacks), furnishings, liens, artwork, kitchen appliances, dishes, pots, pans, silverware, utensils, glasses, outdoor furniture, sports equipment, etc. **many of which are owned by me and not the Debtor. In addition, there are other personal items that belong to the Debtor's children including a personal laptop computer, in which the Debtor has no interest. (Emphasis added)**

d.   In paragraph 9, she states:

"I treated the Properties as mine, lovingly maintaining and upkeeping them, and purchasing furnishings and personal items for the Beach Haven Property specifically. I have a deep emotional and sentimental attachment to the Properties"

(x)    On March 4, 2022, the Trustee filed a written response to Cathleen Mead's objection and specifically states: "The Trustee is not opposed to allowing Mrs. Mead to collect whatever personal items and personally she wishes, provided the times are collected and  removed any March 15, 2022, as any item not removed by that date will be included in the auction.[24]

(xi)     The Truste did not assert any claim or interest on behalf of the Debtor's estate in the personal property located at the Beach Haven Property[25].

(xii)    Under Schedules A/B, the Debtor states under oath that there are no other personal and household items not listed in the bankruptcy schedules[26];

(xiii)   The Debtor does not own antiques[27]; no boats or aircrafts[28]

---

[24] Copy of Trustee's response to Cathleen's Objection it attached as exhibit 5 to the Trustee's Depo T.
[25] See Exhibit 6  to Trustee Depo T.- exhibit A to Certification of Alan P. Fox, Esq
[26] The Debtors schedules A/B are attached as Exhibit 1 to the Trustee Deposition Transcript
[27] P49, L4-5 34 T.
[28] P48,L23-24 341 T.

(xiv)    The Trustee's investigation of personal property owned by the debtor and

located in New Jersey was limited to reviewing the Debtor's bankruptcy

schedules and the conducting the 341 meeting[29]


Under 11 U.S.C. § 544, "as of the date of filing of the debtor's Chapter 7 petition the

trustee holds the status . . . of a hypothetical judicial lien creditor who has levied upon the

debtor's property." *In re Italiano,* 66 B.R. 468, 478 (Bankr. D.N.J. 1986). "As such, the trustee's

lien could only be defeated by a judgment creditor holding a valid lien who had properly

levied." *Id.*

Here, the Court should grant Inspira's cross-motion for summary judgment and deny the

Trustee's motion for summary judgment by finding that Inspira holds a valid secured lien, which

was properly levied, and which defeats the Trustee's hypothetical judicial lien.

**THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED SINCE THE
TRUSTEE HAS FAILED TO SATISFY THE BURDEN OF PROOF.  HERE, THE RECORD
DEMONSTRATES THAT THE HOSPTIAL EXERCISED REASONABLE EFFORT IN GOOD
FAITH TO SATISFY THE REQUIRMENTS  OF R. 4:59-12(d)(1) AND N.J.S.A. 2A:17-1**

The Trustee bears the burden of  proof with respect to his avoidance action against the

defendant Hospital under section 544 of the Bankruptcy  Code.  See Olsen v Paulsen (In re

Paulsen) ,640 B.R. 147(Bankr. N.D. Ill, 2022). Courts have similarly allocated the burden of

proof to the trustee for avoidance actions under Section 544's strong-arm clause. *See,*

*e.g.,* Brown v. Phillips (In re Phillips), 379 B.R. 765, 779 (Bankr. N.D. Ill. 2007); Stone v.

Ottawa Plant Food, Inc. (In re Hennings Feed & Crop Care, Inc.), 365 B.R. 868, 874 (Bankr.

C.D. Ill. 2007). The Court in Olsen held that the bankruptcy court need not decide whether the

evidentiary burden for either exemptions or avoidance is determined by federal or state law,

---

[29] P22 L 13 to P23 L 10  Trustee Depo T.

where under either, the standard is the preponderance of the evidence. Id. In Grogan v Garner,

498 U.S 279, 284-285, 111S.Ct. 654, 112 L.Ed 755 (1991), the Supreme Court held that while

the "validity of a creditor's claim is determined by rules of state law," the issue of

nondischargeability is "a matter of federal law governed by the terms of the Bankruptcy Code.

    The Trustee's position is not supported by credible admissible evidence in the record.

Section 544 of the Bankruptcy Code provides that the Trustee, standing in the position of a

hypothetical executing judicial lienholder as of the time of the Debtor's bankruptcy filing, can

avoid certain liens over which he has priority.  A lien on the real estate enforced by levy, as

opposed to the underlying judgment or indebtedness by defendants for a deficiency, is not

subject to discharge or complete avoidance under the provisions of the Bankruptcy

Code." Chemical Bank v. James, 354 N.J.Super. 1, 9 (N.J. App. Div. 2002) *quoting* Party Parrot,

Inc., 289 N.J.Super. at 171.

    Accordingly, the key distinction amongst holders of judgment liens is whether or not they

have properly levied on the real property.  A judgment creditor who has not levied upon real

estate is subject to a trustee causing their judgment to be a general unsecured claim, whereas a

creditor who has properly levied cannot be divested of its security interest in the levied upon real

property pursuant to 11 U.S.C. § 544(a).

     Priority in this context is determined by state law. Under New Jersey law, "[p]riority

among judgment creditors is determined by the order of their liens of execution." *In re

Silverman, 2 B.R. 326, 330* (Bankr.D.N.J.) (citing Burg v. Edmondson, 111 N.J. Super. 82,  85,

267 A.2d 545 (Ch.Div.1970), *aff'd in part and rev'd in part on other grounds*, 6 B.R.. 991

(1980). Here, Since the Hospital's judgment lien was properly levied upon the Beach Haven

Property before the bankruptcy filing, the Trustee is precluded from avoiding it by operation of §

544 of the Bankruptcy Code.

The Trustee stretches the interpretation of R. 4:59-1(d)(1) and N.J.S.A. 2A:17-1 beyond

logic.  In Bencosme v. Kannankara, 2016 N.J. Super. Unpub. LEXIS 614 (App. Div 2016), the  New

Jersey Appellate Division explains the test for interpretation of a statute, as adopted by the

NJ  Supreme Court, which is to reject a literal interpretation if the result are inconsistent with the

overall purpose:

> When interpreting a statute, we are required to determine the "intent of the
> Legislature," *Hardy v. Abdul-Matin*, 198 N.J. 95, 101, 965 A.2d 1165 (2009), and must first
> consider the plain language of the statute because that is the best indicator of legislative
> intent. *DiProspero v. Penn*, 183 N.J. 477, 492, 874 A.2d 1039 (2005). We are to "ascribe to
> the statutory words their ordinary meaning and significance, and read them in context with
> related provisions so as to give sense to the legislation as a whole." . . . Courts are cautioned
> against "rewrit[ing] a plainly-written enactment of the Legislature or presum[ing] that the
> Legislature intended something other than that expressed by way of the plain language." If
> the language is "clear on its face," courts should "enforce [the statute] according to its terms."
>
> However, "**where a literal interpretation would create a manifestly absurd result,
> contrary to public policy**, **the spirit of the law should control**." . . . **Accordingly, "when a
> 'literal interpretation of individual statutory terms or provisions' would lead to results
> 'inconsistent with the overall purpose of the statute,' that interpretation should be
> rejected."** ( Emphasis added)
>
> [*Perrelli v. Pastorelle*, 206 N.J. 193, 200-01, 20 A.3d 354 (2006) (second, third, and fourth
> alterations in original) (citations omitted) (first quoting *Hardy, supra*, 198 N.J. at 101; then
> quoting *Hubbard v. Reed*, 168 N.J. 387, 392-93, 774 A.2d 495 (2001)).]

More recently the NJ Supreme Court in Sanjuan v. School Dist. of West New York, Hudson County,

256 N.J. 369, 379 (2024) states:

> "[W]hen a literal interpretation of individual statutory terms or provisions would lead to
> results inconsistent with the overall purpose of the statute, that interpretation should be
> rejected." *In re Civ. Commitment of W.W.*, 245 N.J. 438, 449, 246 A.3d 219 (2021) (internal
> quotation marks omitted) (quoting *Hubbard v. Reed*, 168 N.J. , 387, 392,93).

Here the Trustee's literal interpretation of N.J.S.A. 2A:17-1 and R. 4:59-1(d)(1) would create a manifestly absurd result, contrary to public policy. Courts should not accord controlling significance to a mechanical rule of statutory. The Supreme Court held in _Rector, Etc., of Holy Trinity Church v. U.S._ 143 U.S. 457, 460, 12 S. Ct. 511, 512, 36 L. Ed. 226 (1892) _("Holy Trinity"),_ "If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity." The holding of _Holy Trinity_ was affirmed in _U.S. v. American Trucking Assns.,_ 310 U.S. 534, 542, 60 S. Ct. 1059, 1063, 84 L. Ed. 1345 (1940) _("American Trucking"),_ where the Court expanded upon a court's obligation in construing statutory language where literal adherence would be absurd or futile.

In the interpretation of statutes, the function of the courts is . . . . to construe the language  so as to give effect to the intent of Congress . . . . Often [the] words [of the statute] are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act . . . . _Even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words._ (Emphasis added.)

In Matter of Commitment of W.W, 245 N.J. 438(2021), the New Jersey Supreme Court states:

Additionally, a statute must "be read in [its] entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." _D.J.B._, 216 N.J. at 440, 83 A.3d 2 (quoting _Burnett v. County of Bergen_, 198 N.J. 408, 421, 968 A.2d 1151 (2009)). And "when a ' literal interpretation of individual statutory terms or provisions' would lead  to  results  ' inconsistent with the overall purpose of the statute,' that  interpretation should be rejected" _Hubbard v. Reed_, 168 N.J. 387, 392-93, 774 A.2d 495 (2001) (quoting _Cornblatt v. Barow_, 153 N.J. 218, 242, 708 A.2d 401 (1998))

The clear intent of R. 4:59-1(d)(1) and N.J.S.A. 2A:17-1 is to require a judgment creditor to exhaust any personal property prior to obtaining a writ of execution to sell the realty.  As mentioned above, this prerequisite does not appear to apply to the Hospital since it only caused a levy on the Beach Haven Property, without seeking a state court order for the sale of the realty.

17

Even assuming such prerequisite does apply to the Hospital, the Trustee has not offered any credible admissible evidence establishing the existence of any personal property owned by the Debtor and located in Ocean County, New Jersey which would have been disclosed had the Debtor testified in a deposition.  Under these unique circumstances, faulting the Hospital for not serving interrogatories or scheduling a deposition on a judgment debtor who resides in Connecticut, maintains most of his personal property in Connecticut, does not live in New Jersey and has insufficient or insignificant personal property at the Beach Haven Property[30]  would be a futile effort and produce an absurd result.

More compelling is the Trustee's own assessment of the Debtor's personal property located in New Jersey.  While the Trustee points a finger at the Hospital's effort to locate the Debtor's personal property in Ocean County, New Jersey, this Court should take notice that the Trustee testified, under oath at his deposition, that while he has a duty to locate property of the Debtor's estate for liquidation;[31] the Trustee admits:

- Except for reviewing the Debtor's bankruptcy petition/ schedules and conducting the 341 meeting questioning the Debtor, the Trustee testified he took no other action to discover any personal property owned by the Debtor[32], including but not limited to deposing the debtor or serving written interrogatories

- The Trustee did not obtain an inventory of personal property at the Beach Haven Property from Cathleen Mead[33] or the auctioneer[34];

- The Trustee did not obtain any list or report valuing the personal property at the Beach Haven Property from Cathleen Mead[35]or the Auctioneer[36];

---

[30] Even Assume half of the $23,000 listed in Schedule A/B is the value of personal property at Beach Haven Property  and the debtor interest is 50 % or $11,500, such sum is insufficient or  1.6% of the $703,125.00 Judgment
[31] P22, L13-17 Trustee's Depo T – Exhibit A to Certidation of Alan P. Fox, Esq.
[32] P22, L13 to P23 L 10 , Trustee's Depo T.
[33] P35, L113-16, Trustees Depo T.

[34] P36, L3-10 Trustee Depo T.
[35] P35, L21-24  Trustee Depo T.
[36] P36, L7-10 Trustee Depo T.

- The Trustee testified that in a separate bankruptcy adversary case filed by the Trustee against Cathleen Mead in the underlying bankruptcy estate, the Trustee did not assert any claim on behalf of the Debtor's estate for consideration or contributions for the personal property Cathleen Mead removed from the Beach Haven Property [37];

- In fact, the Trustee has no intention of requesting that Cathleen Mead pay money to the Debtor's estate for the potential marital interest in the personal property removed by Cathleen Mead at the Beach Haven Property[38];

- The Trustee had no reason to challenge the Debtor's testimony at the 341 meeting that the estimated collective value of all personal property and furnishing located at the Beach Haven Property, the Jupiter, Florida resident property and the Ridgefield Connecticut property and set forth in schedule A.B was  $23,000.00 [39];

- The Trustee does not assert that had the Hospital served interrogatories or deposed the Debtor, additional personal property located in Ocean County New Jersey would have disclosed additional personal property;

- The Trustee admits (i) the Debtor's personal property located in New Jersey is limited to (a) the bank accounts discovered by the Hospital and (b) the potential Debtor's marital interest in personal property located at the Beach Haven Property. [40]

- The Trustee testified that he determined that the Debtor's alleged 50% marital interest in the personal property at the Beach Haven Property was insufficient to justify the administrative expense to assert any claim against such personal property[41].

- On June 14, 2022 , this Court entered an Amended Order approving the Sale of the Beach Haven Property which provides, in pertinent part:

  o The successful biding and sale price of $1,350,000.00 was approved;

  o The Trustee was authorized to pay the Auctioneer the sum of $108,000.00 representing a 8% commission, together with costs not to exceed $2,500.00; to make the payment to the Mortgagees for the balance due on the mortgage and any unpaid real estate taxes

- The Trustee acknowledges he collected the $1,350,00.00 sale proceeds for the Beach Haven Property[42] and  the balance of the net sale proceeds have been

---

[37] P48, L2-15 Trustee Depo T.
[38] P48, l9-15 Trustee Depo T.
[39] P31, L11-17, Trustee Depo T.
[40] P40 L12 25 Trustee Depo T.
[41] P38 L23 to P39 L2 Trustee Depp T.
[42] P43 L20-22 Trustee Depp T.

deposited into the bank account of the Debtor's estate[43], which should be
sufficient to satisfy the Hospital's Judgment.


Accordingly, the Trustee's interpretation of **N.J.S.A.2A:17-1 is misplaced, and should be
rejected.**    Requiring Inspira to conduct additional discovery would have been a futile effort.
There is no evidence had the Trustee deposed the Debtor, that any other personal property owned
by the Debtor and located in New Jersey would have been discovered.  Rather, the sworn
statement of the Debtor makes clear no other personal property exists in New Jersey, as
acknowledged by the Trustee.  The undisputed facts in the record demonstrate that the Hospital,
under the particular circumstances, exercised a good faith effort to investigate and locate
property owned by the Debtor and located in Ocean County, New Jersey prior to the Sheriff's
levy upon the Beach Haven Property.

For these reasons, this Court must deny the Trustee's motion for summary judgment.

## CONCLUSION

Upon reviewing the applicable law and the record before it, this Court should find that
Inspira has satisfied its burden of proof establishing that the Hospital exercised reasonable effort
in good faith to (1) conduct discovery available to the Hospital upon an out-of-state judgment
defendant and (2) there was no personal property or insignificant personal property to satisfy the
Judgment owned by the Debtor and located in New Jersey at the time  the sheriff levied upon the
Beach Haven Property.

The Hospital respectfully requests that this Court (1) deny the Trustee's motion for
summary Judgment; (2) grant the Hospital's cross-motion for summary judgment; (3) find that
the Hospital holds a valid secured lien against the proceeds from the sale of the Beach Haven

---

[43] P43, L1-8  Trustee Depo T.

Property; and (4) order the Trustee to immediately pay the Hospital the amount of the Judgment,

plus taxed costs, together with post-judgment interest at the rate as determined by the New Jersey

Rules of Court from the proceeds of the sale of the Beach Haven Property.

CAPEHART & SCATCHARD, PA
Attorney for Defendant

Dated:  April 24, 2025          */s/ Alan P. Fox*

_____
Alan P. Fox, Esquire
8000 Midlantic Drive, Suite 300 S
Mt. Laurel, New Jersey 08054
(856) 234-6800