**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Nicholas D. Norcia, Esq.
Stephen A. Schwimmer, Esq.
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732) 449-0525
akelly@kbtlaw.com
nnorcia@kbtlaw.com
sschwimmer@kbtlaw.com
*Attorneys for the Chapter 7 Trustee, Bunce D. Atkinson*

| | |
|---|---|
| IN RE:<br><br>BRIAN W. MEAD,<br><br>　　　　　　Debtor.<br>_____<br><br>BUNCE D. ATKINSON, TRUSTEE FOR DEBTOR ESTATE OF BRIAN MEAD,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>INSPIRA MEDICAL CENTER, INC.,<br><br>　　　　　　Defendant. | **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**<br><br>Chapter 7<br><br>Case No. 21-17470 (MEH)<br><br>Adv. Proc. No. 24-01547 (MEH)<br><br>Judge: Hon. Mark E. Hall, U.S.B.J.<br><br>**Hearing Date: May 14, 2025 at 11:00 a.m.**<br><br>**THE PLAINTIFF'S/TRUSTEE'S REPLY TO DEFENDANT INSPIRA MEDICAL CENTER, INC.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT** |

　　　　The Plaintiff Bunce D. Atkinson (the "Trustee"), the Trustee for the Debtor Estate of Brian Mead (the "Debtor"), by and through his counsel, The Kelly Firm, P.C., offers this brief in reply to the opposition filed by Inspira Medical Center Inc. ("Inspira") to the Trustee's Motion for Summary Judgment (the "Trustee's Motion") and in opposition to Inspira's Cross Motion for Summary Judgment (the "Inspira Cross Motion"). As will be discussed, the Trustee's Motion should be granted and the Inspira Cross Motion should be denied because there are no questions of material fact to dispute that Inspira failed to

1

perfect its security interest in the Debtor's real property located at 6 East 17th Street Beach Haven, New Jersey (the "Beach Haven Property") prior to the Debtor filing for bankruptcy on September 23, 2021 (the "Petition Date"). As such, Inspira's interest rises no higher than unsecured and junior to that of the Trustee as a hypothetical levying lienholder as of the Petition Date.

## PRELIMINARY STATEMENT

Inspira wants something it does not have – a secured lien perfected according to New Jersey law. However, no matter how Inspira attempts to deflect, shift, cajole, or misdirect the facts, law, or burden, Inspira failed to satisfy the clear requirements and mandates under New Jersey law for a judgment creditor to perfect its judgment lien against real property and that blame and the consequences of its shortcomings falls upon Inspira. Inspira's ill-fated attempt to elevate its status as a creditor above the other unperfected unsecured creditors must end at this summary judgment phase.

**I.    Because There are No Disputed Questions of Material Fact, this Matter is Undisputedly Ripe for Summary Judgment**

The Trustee's Motion for Summary Judgment must be granted because there are no questions of material fact as to whether Inspira perfected its purported security interest in the Beach Haven Property – it did not. Inspira, in its cross-motion, admits nearly all material facts asserted by the Trustee and similarly contends this matter is ripe for summary judgment. See ECF No. 15-2. Effectively, the parties substantially agree on both the pertinent facts and that the matter is ripe for a dispositive judicial.

Fed. R. Civ. P. 56, made applicable hereto by operation of Fed. R. Bankr. 7056, provides that before summary judgment as a matter of law may be granted as to any claim or defense, the movant must demonstrate that there is no issue of material fact. Fed. R. Civ. P. 56. "Of course, a party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identify those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

2

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this prima facie burden, the nonmovant must then set out "specific facts showing a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). The party opposing summary judgment may not rely on mere allegations but "must set forth specific facts showing there is a genuine issue for trial." Id. at 248.

Here, the parties agree there is no genuine issue as to any of the following material facts:

- On April 16, 2021, Inspira obtained a civil default judgment against the Debtor in the Law Division in the amount of $703,125, plus interest and costs of suit. See ECF Nos. 10-5, ¶ 1; 15-6.
- On June 17, 2021, Inspira filed for a writ of execution against the Debtor that directed the Sheriff of Burlington County, in pertinent part, to:
    - Satisfy the said judgment out of personal property of the said Judgment debtor within your County; and if sufficient personal property cannot be found, **then subsequent to your levy and only after receipt of an order of the Court pursuant to R. 4:59-1 (d), out of the real property** in your County belonging to the judgment debtor(s) at the time when the judgment was entered or docketed. See ECF Nos. 10-5, ¶ 2; 15-6, ¶ 2 (emphasis added).
- On the following day, June 18, 2021, Inspira sent an information subpoena to Debtor. See Certification of Alan P. Fox ("Fox Cert."), ¶ 14. Exh. K.
- On July 2, 2021, Inspira applied for an alias writ of execution directed to the Sheriff of Ocean County. See ECF Nos. 10-5, ¶ 3; 15-6, ¶ 3.
- On July 7, 2021, the Clerk of the Superior Court issued the Burlington County Writ. See ECF Nos. 10-5, ¶ 4; 15-6, ¶ 4.
- On July 20, 2021, the Clerk of the Superior Court issued the Ocean County Writ. See ECF Nos. 10-5, ¶ 5; 15-6, ¶ 5.
- On August 5, 2021, the Sheriff of Burlington County served a Writ of Execution upon Chase Bank; PNC Bank; Wells Fargo Bank; TD Bank; and Truist Bank. See ECF Nos. 10-5, ¶ 6; 15-6, ¶ 6. On August 16, 2021, the Sheriff of Burlington County filed an amended bank levy report reflecting that Chase Bank was holding the sum of $5,498.19 (the "Bank Levy"). Ibid.

- On August 11, 2021, the Debtor filed a motion to vacate the default judgment. See ECF No. 15-5, ¶ 12.
- On August 17, 2021, the Sheriff of Ocean County levied upon the Beach Haven Property. See ECF Nos. 10-5, ¶ 7; 15-6, ¶ 7.
- On August 30, 2021, the state court denied the Debtor's motion to vacate the judgment.
- On August 31, 2021, two weeks after the levy upon the Beach Haven Property, Inspira provided to Debtors' counsel copies of the information subpoenas previously provided to Debtors. See Fox Cert., ¶ 15.
- On September 22, 2021, Inspira filed a motion for turnover of funds from the Bank Levy. See ECF Nos. 10-5, ¶ 8; 15-6, ¶ 8.
- On September 23, 2021, while the motion to turnover funds remained pending, the Debtor filed a Chapter 11 bankruptcy petition. See ECF Nos. 10-5, ¶ 9; 15-6, ¶ 9.
- On October 29, 2021, Inspira withdrew its motion for turnover funds as to the three bank accounts levied that pertained to Debtor. See ECF No. 15-6, ¶ 10; 15-6, ¶ 10.
- On November 5, 2021, the state court granted Inspira's order for a turnover of funds of the account in the name of Touchstone Technology Consulting Ops Inc. Ibid.
- There exists no record on the state court civil docket of any motion to enforce a levy upon the Beach Haven Property. See ECF Nos. 10-5, ¶ 11; 15-6, ¶ 11.
- On January 14, 2022, Inspira filed an adversary proceeding against the Debtor (the "Discharge Objection Action"). See ECF No. 10-5, ¶ 12; 15-6, ¶ 12.
- On January 26, 2022, the Trustee filed a notice of proposed sale of the Beach Haven Property. See ECF Nos. 10-5, ¶ 13; 15-6, ¶ 13.
- On February 28, 2022, Inspira filed a limited objection to the proposed sale of the Beach Haven Property, raising no objection to the sale but maintaining that its April 19, 2021 judgment lien should attach to the sale proceeds. See ECF Nos. 10-5, ¶ 15; 15-6, ¶ 15.
- On April 7, 2022, the Trustee filed a motion to sell the Beach Haven Property free and clear of any liens or encumbrances. See ECF Nos. 10-5, ¶ 16; 15-6, ¶ 16.
- On April 21, 2022, Inspira filed another limited objection to the sale of the Beach Haven Property, again not opposing the sale but rather asserting that its judgment lien "should attach to the sale proceeds generated from the Trustee Auction" for the Beach Haven Property. See ECF Nos. 10-5, ¶ 17; 15-6, ¶ 17.
- On May 11, 2022, the Bankruptcy Court entered an order approving the sale of the Beach Haven Property free and clear of all liens, claims and encumbrances over Inspira's objection. See ECF Nos. 10-5, ¶ 18; 15-6, ¶ 18.

4

- On August 25, 2022, Inspira and the Debtor entered a consent order stipulating a settlement of the Discharge Objection Action that, among other things, Debtor's prejudgment debt to Inspira was non-dischargeable, and that the Debtor could pay Inspira a total of $340,000 by the end of 2023 to reduce the judgment debt by either by selling the Beach Haven Property or paying Inspira directly. See ECF Nos. 10-5, ¶ 19; 15-6, ¶ 19.
- On August 27, 2024, the Trustee filed the instant adversary complaint against Inspira seeking to establish that Inspira's prepetition unperfected judgment lien was not a secured claim. See ECF Nos. 10-5, ¶ 22; 15-6, ¶ 22.
- On August 30, 2022, the Discharge Objection Action was closed. See ECF Nos. 10-5, ¶ 20; 15-6, ¶ 20.

Again, there is no dispute as to any of these facts. The only dispute is as to the legal significance of those facts. With respect to that dispute, the clear weight of authority supports the Trustee's legal position, as will be discussed. Therefore, there being no genuine dispute as to any material facts warranting a trial, the matter is undisputedly ripe for summary judgment. Celotex, 477 U.S. at 323.

**II.   Inspira's Premature Levy Upon the Debtor's Beach Haven Property Done Before Exhausting Efforts to Locate and Levy upon the Debtor's Personalty, Renders the Levy Invalid and the Lien Unperfected**

11 U.S.C. §§ 544 and 545 of the Bankruptcy Code (the "Code"), authorizes the Trustee to avoid liens over which the Trustee has priority as a hypothetical executing judicial lienholder, as determined under state law. The Trustee is further empowered to avoid the fixing of a statutory lien on property of the Debtor "to the extent that such lien . . . is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser . . . at the time of the commencement of the case, whether or not such purchaser exists." 11 U.S.C. §545(2).

Courts have uniformly interpreted these provisions of the Code to reflect that if a real estate lien is "unperfected" at the time of the bankruptcy filing it will be "subject to avoidance under the Code and therefore may . . . be discharged of record." Party Parrot, Inc. v. Birthdays & Holidays, Inc., 289 N.J. Super. 167, 170, 174 (App. Div. 1996).

5

"The date of filing of the bankruptcy petition establishes the rights of the trustee as a hypothetical judicial lien creditor with a superior lien over any judgment creditor who has not *properly* levied." In re Italiano, 66 B.R. 468, 479 (Bankr. D.N.J. 1986). Furthermore, a bankruptcy trustee obtains "the right not only of a hypothetical judgment creditor but of a hypothetical *levying* judgment creditor as well." In re Silverman, 6 B.R. 991, 995-96 (D.N.J. 1980) (citing In re Blease, 605 F.2d 97, 98 (3rd Cir. 1979)).

The process for "perfecting" a lien against real estate in New Jersey is established by statute and by the Rules of Court. The operative statute at issue, N.J.S.A. 2A:17-1, provides:

> In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattels in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same.
>
> [Ibid.]

This statute has been interpreted in case law as "clearly and unequivocally express[ing] the legislative mandate that before the real property of a debtor may be seized and sold, the sheriff shall first levy upon the debtor's goods and chattels located within the county to satisfy the judgment and costs." Raniere v. I & M Investments, Inc., 159 N.J. Super. 329, 335 (Ch. Div. 1978), aff'd, 172 N.J. Super. 206 (App. Div. 1980). Accord Italiano, 66 B.R. at 478. "A material departure from the positive command of the statute renders the execution void." Raniere, 159 N.J. Super. at 336. See also Italiano, 66 B.R. at 474 ("[A]n execution, as well as a sale, made prior to a good faith attempt to locate and levy upon a debtor's personalty is void.").

6

In accordance with the statute, Rule 4:59-1 provides that a writ of execution "shall be made out of the judgment debtor's personal property before the judgment-creditor may proceed to sale of the debtor's real property." R. 4:59-1(d)(1). Only "[i]f the debtor's personal property is insufficient or cannot be located," should the judgement creditor be permitted to proceed against real property, and then only upon filing a motion to obtain such relief "supported by a certification specifying in detail the actions taken by the judgment creditor to locate and proceed against personal property." Ibid.

In Raniere, 159 N.J. Super. at 335, aff'd, 172 N.J. Super. at 208, where a creditor caused the sheriff to levy upon real estate the same date that a writ of execution issued, the Chancery Division vacated the sheriff's sale that flowed from the writ, and the Appellate Division, in a reported decision, affirmed that result on the reasons given by the Chancery Division judge. Ibid. The court's reasoning was premised on a historical analysis going back centuries. Traditionally, the Raniere court noted, "real property was not subject to execution" under the common law. Raniere, 159 N.J. Super. at 334. Since 1799, the year creditors first received statutory authorization in New Jersey to execute upon real property to satisfy debts, the Legislature has always required "exhaustion of the personalty" as a condition precedent to seizing the land. Ibid. (quoting Bulat v. Londrigan, 63 N.J. Eq. 22, 27 (Ch. 1902), aff'd o.b. 65 N.J. Eq. 718 (E. & A. 1903)). After discussing different iterations of the statute, all of which continued this same condition precedent, the court then held that N.J.S.A. 2A:17-1 "clearly and unequivocally expresses the legislative mandate that before the real property of a debtor may be seized and sold, the sheriff shall first levy upon the debtor's goods and chattels located within the county to satisfy the judgment and costs." Id. at 335.

Similarly, in Silverman, 6 B.R. at 995-96, where a bankruptcy creditor argued that it had a valid, secured lien on the debtor's real property due to a prepetition writ of execution and levy upon the real property, the bankruptcy court voided the pre-petition execution, and the District Court affirmed, on the

7

grounds that the execution was accomplished prior to good faith attempt to locate and levy upon the debtor's personalty.

In Daeschler v. Daeschler, 214 N.J. Super. 545, 550, 556 (App. Div. 1986), where a creditor of one spouse sought to intervene in a completed divorce action, the trial court denied the motion to intervene, and the Appellate Division affirmed in a published decision, partially on the grounds that the pre-divorce levy on real property by the creditor had not been perfected prior to the divorce decree. Ibid. In that case, when the sheriff returned the writ of execution it showed a levy against the marital residence without having first levied upon personalty since the sheriff, per the return, "was refused access to the premises." Id. at 550. On appeal, Judge Pressler, writing for the unanimous panel, noted that ordinarily "the creditor must exhaust the debtor's available personal property located in the county **before** resorting to his real property." Id. at 556 (Pressler, J.) (emphasis added). The panel expressly rejected the creditor's position "that the denial of access justified the immediate resort to a levy on realty," and held that "[t]ypically, the necessary determinations require at the least a deposition taken by way of supplementary proceedings" available under Rule 4:59-1.

Here, the Sheriff attempted to levy upon the Debtor's real property the day after the Bank Levy, which was before Inspira's motion to turnover the funds levied upon, and before Inspira's other efforts at asset discovery, including an information subpoena served on Debtor's counsel, and post-petition deposition testimony. The undisputed record reflects that the real estate levy was necessarily prior to Inspira exhausting its efforts to proceed against the Debtor's personalty in the county and was therefore void. Ibid.

Inspira has raised no specific facts to dispute that its efforts to locate and levy upon Debtor's personalty were very much ongoing at the time the bankruptcy petition was filed. In particular, (i) on August 31 (fourteen (14) days **after** having the Ocean County Sheriff levy on the Beach Haven real estate),

8

Inspira served Debtor's counsel with a post-judgment information subpoena that was not completed pre-petition; and (ii) Inspira's motion for turnover of the Debtor funds in four bank accounts also remained pending at the time of the filing of the bankruptcy petition. Despite this, undisputedly, Inspira caused the sheriff to levy upon the Debtor's realty before any of these efforts to attach to the Debtor's personalty were completed. And Inspira caused the real estate to be levied without first filing a motion to enforce the levy upon the real property, as required by the express language of the writ of execution obtained by Inspira. As in the above precedents, , the attempt to levy upon realty was, and remains, invalid, Inspira's lien remains unperfected, and its claim remains unsecured.

### III. Inspira's Arguments in Favor of the Priority of its Security Interest are Legally Unsupported

Despite its protests to the contrary, Inspira has not presented any credible evidence or persuasive legal arguments to support finding that it complied with the requirements for R. 4:59-1(d)(1) and N.J.S.A. 2A:17-1 prior to the levy on the Beach Haven Property, and therefore somehow holds a secured lien with priority over that of the Trustee.

Again, N.J.S.A. 2A:17-1 provides that only "if sufficient goods and chattels . . . cannot be found," should the sheriff then be directed to "cause . . . such debt . . . to be made of the real estate." And under the Rule, only "[i]f the debtor's personal property is insufficient or cannot be located," and only after filing a motion to levy upon real property "supported by a certification specifying in detail the actions taken by the judgment creditor to locate and proceed against personal property," is the judgment creditor permitted to cause the sheriff to levy upon real property. R. 4:59-1(d).

An "improper levy cannot be perfected or cured by any post-petition act under applicable state law, since the execution against the real property is void, not merely voidable by the Trustee." Italiano, 66 B.R. at 480. Indeed, inherent in the exhaustion requirement is that "the judgment creditor must make a

9

good faith attempt to ascertain the location of the debtor's personalty within the county <u>and supply this information to the sheriff along with the writ of execution</u>." Borromeo v. DiFlorio, 409 N.J. Super. 124, 137 (App. Div. 2009) (emphasis added).

Here, Inspira admits it did not obtain sworn testimony from Plaintiff prior to levying on the Beach Haven Property, much less did Inspira, as required under the above authorities, provide the sheriff in the body of the writ itself with information obtained as part of a good faith effort to first locate and levy upon the personalty. Borromeo, 409 N.J. Super. at 137. Instead, Inspira relies on an August 2021 certification in the state court action in which the Debtor stated that he did not reside at the Beach Haven Property but makes absolutely no statement about personalty contained at the Beach Haven Property. Inspira's brief admits that Inspira served Debtor with an information subpoena on June 18, 2021, which the Debtor never responded to. As such, the record is clear that on the Petition Date, Inspira did not obtain a sworn statement from Debtor indicating that there was no personalty at the Beach Haven Property, and Inspira did not exert sufficient additional efforts constituting a good faith attempt to locate personalty prior to levying on the Beach Haven Property. Inspira further failed to comply with R. 4:59-1(d)(1) and to properly levy the Beach Haven Property by failing to file a motion to obtain an order to authorize Inspira to levy upon the Beach Haven Property supported by a certification indicating specific actions taken to locate Debtor's personalty.

Finally, to the extent that Inspira attempts to rely on certain post-petition testimony of the Debtor the Debtor's spouse, Cathleen Mead, or the Trustee in support of its contention that Inspira complied with R. 4:59-1(d)(1) and N.J.S.A. 2A:17-1, these efforts are fruitless. The only pertinent issue is whether Inspira exhausted its good-faith efforts to locate and levy upon personalty prior to levying upon realty. The post-petition testimony cited by Inspira necessarily has no bearing on Inspira's improper levy on the Beach Haven Property and, moreover, supports that Inspira failed to use reasonable efforts to locate Debtor's

10

personal property housed at the Beach Haven Property. For example, Inspira references representations in the Bankruptcy Court by both Debtor and Cathleen Mead that the personal property located in New Jersey was limited to marital interest in furnishing and household goods located at the Beach Haven Property. Whether Debtor had personalty at the Beach Haven Property or not (he did), the relevant point is that Inspira did not obtain this testimony until <u>after</u> the Petition Date and, necessarily, after the real estate levy. Inspira indisputably not obtaining any such sworn testimony prior to the petition or the levy is the point, and had Inspira obtained the sworn testimony they would have known there was personalty yet exhausted and levying on the real estate was inappropriate and premature. But Inspira jumped the gun, failed to comply with the statute, and is therefore indisputably an unperfected, unsecured, judgment creditor.

### IV.     Inspira's Contention that it Did Not Need to Perfect Its Security Interest Must Fail

Glaringly absent from Inspira's brief is any recognition that pre-petition perfection of its security interest in Debtor's real property is a prerequisite to any finding that it has a valid secured lien at the post-petition stage.

To the extent that Inspira, by its silence, contends that the prerequisite to locate personal property is *not* necessary to perfect its lien on Debtor's real property, this argument is unsupported by any legal authority. Indeed, the sole, unreported case Inspira relies upon in support of such contention, <u>In re O'Grady</u>, Nos.20-18906, 21-16401,2022 U.S. Dist. Lexis 65721) D.N.J. Apr.8, 2022). is easily distinguishable because the court's discussion of <u>Rule</u> 4:59-1(d) in that case arose in the context of assessing an appeal from an order approving settlement under the deferential standards set forth in Fed. R. Bankr. P. 9019(a). which directs courts to approve proposed settlements as long as they are "fair and equitable" and "in the best interest of the estate." <u>Id.</u> citing <u>In re Apex Oil Co.</u>, 92 B.R. 847 (Bankr. E.D. Mo. 1988); <u>Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v.Anderson</u>, 390 U.S. 414, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968); <u>In re Hydronic Enter., Inc.</u>, 58 B.R. 363 (Bankr. D.R.I.

11

1986). As such, any discussion of the O'Grady court's stray reference to R. 4:59-1 is dicta and non-dispositive, particularly considering the substantial authorities already discussed above. The undisputed facts show that Inspira did not exhaust attempts to proceed against Debtor's personalty before levying upon its real property. Because of this failure to adhere to N.J.S.A. 2A:17-1 and Rule 4:59-1(d), the levy upon the Beach Haven Property was premature and invalid and Inspira's underlying judgment lien unperfected.

As to Inspira's argument that there is a meaningful distinction between perfecting a lien by levying upon real estate and perfecting a lien by seeking to compel a sale for purposes of establishing the priority and validity of its lien, this argument is meritless. The plain language of N.J.S.A. 2A:17-1 states that for *every* writ of execution issued against real estate, the sheriff must be directed to first satisfy the debt from the judgment debtor's personalty, and only after sufficient personalty cannot be located, then from the judgment debtor's real estate. The statute makes no indication that the levy on real property must be in furtherance of a sale of the property to require compliance. Inspira fails to explain how a direct seizure of the Property requires somehow less fulsome efforts to satisfy a debt out of personalty first than it would a compelled sale.

Indeed, in Silverman, the District Court rejected essentially the exact same argument Inspira raises here. The creditor in that case, like Inspira, contended it should not be subject to the standard set forth in Raniere and related precedents that a creditor must first levy upon personalty before proceeding against realty, specifically arguing "Raniere should not be determinative . . . because it dealt with an execution sale made before any attempt had been made to locate or levy upon personalty," whereas, in Silverman, "no sale was made before personalty was levied upon." Id. at 995. The District Court quickly dismissed that argument upon noting that under a properly strict construction of N.J.S.A. 2A:17-1, as well as the common-law prohibition on seizing land to satisfy debts on which the statute is based, a levy is void if

12

"made prior to a good faith attempt to locate and levy upon a debtor's personalty." Id. at 995-96. It is because "N.J.S.A. 2A:17-1 is in contravention of common law," that it "therefore must be strictly construed . . . mandat[ing] that the sheriff exhaust all personalty of the debtor that can be located within the county before levying and executing against the debtor's realty.'" Id. at 995 (quoting Raniere, 159 N.J. Super. at 336).

Inspira's arguments beg the question: if Inspira did not need to comply with the statute or R. 4:59-1, how could Inspira have perfected its security interest in the Beach Haven Property? The answer is simple: Inspira could not have perfected its security interest otherwise. Inspira's obscure claim that a creditor can simply evade the express statutory requirement to look first to personalty before realty in satisfying the debt as long as the attempt is not connected to a motion to force a sale is legally unsupported and illogical.

Finally, assuming *arguendo* that the case law and language of the Rule and Statute did not obligate Inspira to comply with N.J.S.A. 2A:17-1 and R. 4:59-1, Inspira still failed to properly levy against the Beach Haven Property because Inspira's obligations arose under the terms of its own Ocean County Writ. The Ocean County Writ required a levy and attempt to locate and satisfy the debt out of the Debtor's personalty and further required the receipt of a separate order of the Court pursuant to R. 4:59-1(d) before levying on the Debtor's real property. Inspira admits that it did not file a motion to enforce the levy on the Beach Haven Property and thus did not obtain an order authorizing the same. Regardless of whether Inspira was statutorily or legally obligated to comply with N.J.S.A. 2A:17-1 and Rule 4:59-1 (it was), Inspira did not properly levy on the Beach Haven Property, per the clear terms of the Ocean County Writ. Since the Trustee has rights of a hypothetical levying judgment creditor with priority over any judgment creditor who failed to properly levy, Trustee's interest in the Beach Haven Property undeniably has priority over any purported interest of Inspira.

**Conclusion**

As demonstrated, there are no questions of material fact to dispute that Inspira failed to perfect its security interest in the Beach Haven Property prior to the Petition Date. Inspira did not exert reasonable efforts to first locate and levy on Debtor's personalty located in Ocean County prior to its attempted but invalid levy on the Beach Haven Property. Accordingly, any purported interest of Inspira in the Beach Haven Property is unsecured and in all scenarios junior to the Trustee's interest as a hypothetical levying lien holder as of the Petition Date. For the reasons discussed, the Trustee respectfully requests that the Court grant the Trustee's Motion and deny Inspira's Cross Motion.

        Respectfully submitted,

        **THE KELLY FIRM, P.C.**
        *Counsel for the Chapter 7 Trustee, Bunce D. Atkinson*

By:   */s/ Stephen A. Schwimmer*
       **STEPHEN A. SCHWIMMER**

Dated: May 6, 2025