| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>William G. Wright<br>Alan P. Fox<br>CAPEHART & SCATCHARD, P.A.<br>8000 Midlantic Drive, Suite 300 S<br>Mt. Laurel, New Jersey 08054<br>(856) 234-6800<br>Attorneys for Defendant | |
| In Re:<br><br>Brian W. Mead,<br><br>              Debtor | Chapter 7<br><br>Case No.: 21-17470-KCF<br><br>Judge: Mark Edward Hall, U.S.B.J. |
| Bunce D. Atkinson, Trustee for Debtor Estate of Brian Mead.<br>              Plaintiff,<br><br>   vs.<br><br>Inspira Medical Center, Inc.<br><br>              Defendant. | Adversary No.: 24-01547-MEH |

**DEFENDANT INSPRIA MEDICAL CENTER, INC.'S REPLY BRIEF TO TRUSTEE'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**THE STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other. *See* In re Zerbo, 397 B.R. 642, 647 (Bankr. E.D.N.Y. 2008) (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.1993); In re Rodriguez, 50 B.R. 576 (Bankr. E.D.N.Y. 1985). Here, the parties agree there are no genuine issues as to any of the material facts. At page 5 of the Trustee's brief opposing the Defendant

1

Inspira Medical Center, Inc.'s (the "Hospital") cross-motion for summary judgment, the Trustee acknowledges "[t]he only dispute is as to the legal significance of those facts." For the reasons set forth in the Hospital's brief in support of its cross-motion for summary judgment, this matter is ripe for summary judgment in favor of the Hospital.

**THE CASE LAW CITED BY THE TRUSTEE IS DISTINGUISHABLE UNDER THE PRESENT CIRCUMSTANCES.**

The Trustee's reliance on the decision in Raniere v. I & M Investments, Inc., 159 N.J. Super. 329, 335 (Ch. Div. 1978), aff'd, 172 N.J. Super. 206 (App. Div. 1980) is clearly distinguishable from the circumstances in this case. In Raniere, the Chancery Court interpreted NJ.S.A 2A:17-1 by stating:

> The present statute, *N.J.S.A.* 2A:17-1, clearly and unequivocally expresses the legislative mandate that before the real property of a debtor may be seized and sold, the sheriff shall first levy upon the debtor's goods and chattels located within the county to satisfy the judgment and costs. …. The statute mandates that the sheriff exhaust all personalty of the debtor that can be located within the county before levying and executing against the debtor's realty.

159 N.J. Super. at 335.

The circumstances in Raniere are clearly distinguishable from the instant case. The Chancery Court in Rainier addressed a narrower question: Whether a judgment creditor that *seized and sold real property* had made any reasonable effort to locate personalty within the county before executing on the realty. In Raniere, unlike the instant case, the judgment creditor actually proceeded with an execution sale of realty, without engaging in any post-judgment discovery, and without any evidence in the record to establish whether or not there was any personally owned by the judgment in the county of the realty.

2

Unlike the circumstance in <u>Raniere</u>, here, the Hospital never sought to sell the Beach Haven Property and no execution sale was scheduled. A plain reading of R. 4:59-1(d)(1) only imposes a duty to locate personalty if the creditor is seeking a writ of execution to sell realty. R.4:59-1(d)(1) imposes no duty to locate personalty to simply levy on the realty under N.J.S.A.2A:17-39. The decision in <u>Raniere</u> never address a duty to locate personalty if the creditor only seeks to levy as permitted under N.J.S.A. 17-39.

The Trustee's reliance on the decision in <u>In re Silverman</u> 2 B.R 326 (Bankr. N.J.1980), *affirmed* 6 B.R. 991 (D.N.J. 1966) is also distinguishable. In <u>Silverman</u> the court focused on the following material facts: (i) the judgment creditor did not serve written discovery until one year after the writ of execution was issued; (ii) the interrogatories propounded made no reference to household furnishings; (iii) on August 28,1978, the Sheriff levied on the real property of the Silvermans; (iv) on November 28, 1978, the sheriff levied on the personal property of the Silvermans and revealed the presence of personalty at the real property; (v) On December 22, 1978, the Silverman's filed for bankruptcy protection, which also was deemed the date of the Trustee's hypothetical lien. Since the record established the sheriff reported an inventory of housing goods and furnishing located at the real property prior to the levy on the real property, the Court in <u>Silverman</u> found that the creditor had not made a "good faith" attempt to cause the sheriff to inventory the personalty of the debtor prior to levy upon the real property. Consequently, the Court in <u>Silverman</u> held that the levy on the real property was invalid and inferior to the lien of the Trustee.

Here, the circumstance are clearly distinguishable from those in <u>Silverman</u>. Here, the Hospital made a reasonable effort to engaged in post–judgment discovery of personal property by timely serving written discovery on the Debtor( form information subpoena seeking

3

information about personal property and its location, See, *Exhibit K to Fox Certification*) and causing the sheriff to serve Writ of Executions upon Chase Bank, PNC Bank, Wells Fargo Bank, TD Bank and Truist Bank. Unlike the Silvermans, Brian Mead is a Connecticut resident. He was not located in New Jersey, making compelling answers discovery from Mead by way of a court order not an option.  In Silverman, the Chancery Court included in its published decision an inventory of  furnishings and household goods  report by the sheriff as located at the real property prior to the levy on the real property. Supra,  2 B.R. at 328.  Unlike the circumstance in Silverman, the Trustee has not offered any inventory of the Debtor's personal property located in the New Jersey to satisfy the Judgment. Unlike the circumstances in Silverman, the Trustee testified that the furnishing and house goods at the Beach Haven Property were insignificant in value. Unlike the circumstances in Silvermans, the Trustee allowed Cathleen Mead to remove any or all furnishing and house goods from the Beach Haven Property prior to the Trustee's sale of the Beach Haven Property.

     Here, the record in this case includes; (i) sworn statements by Brian Mead that there was no personalty was located in New Jersey, other than the furnishing and household good located at the Beach Haven Property; (ii) a sworn statement by Cathleen Mead the Debtor had no interest in the furnishing and household goods at the Beach Haven Property, and (iii) the Trustee's sworn statement any interest of the Debtor in personalty located at the Beach Haven Property was insignificant and would not justify the administrative cost for the Trustee to pursue and sell such personal property. Collectively, these sworn statements in the record  makes a reasonable inference that the Debtor did not own personally located in the New Jersey sufficient to satisfy the Hospital's Judgment.

**THE HOSPITAL'S CROSS-MOTION OF SUMMARY JUDGMENT SHOULD BE GRANTED.**

**Inspira's Levy upon the Debtor's Beach Haven Property created a valid perfected lien under N.J.S.A. 2A:17-39 superior to the Trustee's subsequent hypothetical lien under 11 U.S.C. §§ 544 and 545 of the Bankrupcty Code.**

The Trustee has priority as a hypothetical executing judicial lienholder under 11 U.S.C. §§ 544 and 545 of the Bankruptcy Code (the "Code") as determined under state law. However, the Trustee, as a hypothetical executing judicial lienholder, is without power under § 544(a)(2) of the Code to avoid the Hospital's interest in the Beach Haven Property since the Hospital is a judgment lien creditor that levied under N.J.S.A. 2A:17-39 before the Debtor's bankruptcy filing.

A judgment docketed in Superior Court of New Jersey creates a lien on all real estate of the judgment debtor located in New Jersey from the date the judgment is docketed. <u>In Re Fornabai,</u> 227 F. Supp. 928, 930 (D.N.J.1964). A judgment creditor does not necessarily prevail over creditors who have obtained subsequent judgments. N.J.S.A.2A:17-39. Priority among judgment creditors is determined by the order of their levies of execution. <u>Burg v. Edmondson,</u> 111 N.J. Super. 82, 85, 267 A.2d 545 (Ch. Div. 1970). The levy of execution on lands of a judgment debtor pursuant to a judgment fixes the priority lien of that judgment. See, N.J.S.A. 2A:17-39; See, <u>Burg v Edmondson</u>, 111 N,J. Super, 82, 85 (Ch. Div. 1970); <u>Swift & Co.v. First Nat'l Bank,</u> 114 N.J. Eq. 417, 421(Ch. Div.1933)(Cited by <u>In Re Silverman</u>, 2 B.R. 326 (Bankr.N.J.1980).

In New Jersey, a levy and an execution sale are both methods used to enforce a judgment, but have different legal results. A levy could involve seizing bank accounts or personal property and turning it over to the creditor or selling it at public auction to satisfy the debt. A levy may also

involve real property. The levy of execution on lands of a judgment debtor pursuant to a judgment fixes the priority lien of that judgment under N.J.S.A. 2A:17-39, and makes the levying judgment lien superior to prior judgment liens, but does not give such creditor the automatic right to sell the real estate. This concept aids the diligent judgment lien creditor.

It is well settled in New Jersey case law. "[i]rrespective of when a judgment creditor obtains or dockets a judgment, the creditor who levies first has priority over all non-levying judgment creditors." N.B. Sav. Bank v. Markouski, 123 N.J. 402, 413 (1991); see *N.J.S.A.* 2A:17-39; see Pulawski Sav. and Loan Ass'n v. Aguiar, 174 *N.J.Super.* 42, 49, 415 *A.*2d 365 (Ch. Div. 1980); Clement v. Kaighn, supra, 15 N.J. Eq. 47,58( Ch. Div, 1862). That rule of priority, in existence in substantially similar form since 1743, is codified under *N.J.S.A.* 2A:17-39. The Supeme Court in Markouski comments on the interpretation of *N.J.S.A.* 2A:17-39:

> Although the statutory language is arcane, it has been consistently construed as granting to even a junior levying creditor a priority over all senior nonlevying judgment creditors in the distribution of the proceeds of a sheriff's sale. *See Pulaski, supra*, 174 *N.J.Super.* at 46, 415 *A.*2d 365; *Clement v. Kaighn, supra*, 15 N.J. Eq. at 52 Significantly, after the execution sale, the nonlevying creditor's lien is completely extinguished with respect to the sold property, and the lien is no longer deemed an encumbrance on that property. *See Clement v. Kaighn, supra*, 15 N.J,. Eq at 52.

Id. 123 at 413-414.

The equitable reason for reaching this result is stated by the Court in Clement: "This is the inseparable consequence of the *laches* of the (prior judgment lien creditor ) in not suing out execution upon his judgment." Supra. 15 N.J. Eq. at 59.

An execution sale, on the other hand, specifically involves filing an application to obtain a writ of execution pursuant to R. 4:59-1(d)(1) authorizing the sheriff to sell the debtor's real property under N.J.S.A. 2A:17-1. Before causing the sale of real property, the judgment creditor

6

must make a "reasonable effort" in good faith to locate personalty in the county of the real property and report to the Sheriff that no personalty or insufficient personalty was located in the county of the real property before the sheriff may conduct an execution sale of the real property. R. 4:59-1(d)(1) and N.J.S.A. 2A17-1.

Upon a review of the admissible evidence in the record, this Court should find that the Hospital has satisfied its burden of proof and grant its cross-motion for summary judgment. The Hospital simply exercised its rights under *N.J.S.A.* 2A:17-39 to levy on the Beach Haven Property without seeking a writ of execution under R. 4:59-1(d)(1). The Hospital, as a levying creditor, should be rewarded for its diligence by gaining priority over the Trustee's subsequent hypothetical judgment levying lien. See, N.B. Sav. Bank v. Markouski, Supra, 123 N.J at 425. (Citing *In re Fornabai, supra*, 227 *F. Supp.* at 931-32 ( *N.J.S.A.* 2A:17-39 encourages the "vigilant" judgment creditor to gain "the proper effect and fruits" of its vigilance"). This Court must find the Hospital holds a valid lien as a levying judgment creditor under N.J.S.A.2A:17-39, which is superior in time to the Trustee's hypothetical lien under 11 U.S.C. §§ 544 and 545 of the Code. As such, the Hospital's cross -motion for summary judgment must be granted.

**THIS COURT MUST DENIED THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration. *Coach, Inc. v. Peters*, 386 F.Supp.2d 495, 497 (S.D.N.Y. 2005); see also *Considine v. Schachter (In re Schachter)*, No. 05-9404, 2007 Bankr. LEXIS 2621, 2007 WL 2238293 (Bankr .S.D.N.Y. Aug. 1, 2007); See, Halsey v Pfeiffer, 750 F.3d 273, 287 (3rd Cir.

2014).  As explained below, the Hospital's judgment lien on real estate enforced by levy, as opposed to a non-levying judgment creditor, is not subject to the Trustees avoidance powers under the provisions of the Bankruptcy Code." See ,Chemical Bank v. James, 354 N.J.Super. 1, 9 (N.J. App. Div. 2002)(Citing Party Parrot, Inc. v, Holidays, Inc., 289 N.J.Super.167, 175 (App. Div. 1996)("The trustee, as a hypothetical executing judicial lienholder, therefore, would have been without power under § 544(a)(2) to avoid plaintiff's interest in defendant's real property if there was a levy before defendant's bankruptcy filing.")

    The Trustee has failed to demonstrate, through admissible evidence, causing the Hospital to engage in additional post-judgment discovery was necessary under R 4:59-1(d)(1), or would result in finding personal property owned by the Debtor and located in Ocean County, NJ. The Trustee has failed to introduce any inventory of personal property located at the Beach Haven Property or other admissible evidence establishing or suggesting the Debtor owned the furnishing and household goods anywhere in Ocean County, New Jersey sufficient to satisfy the Hospital's Judgment.  All reasonable inferences from a review of admissible evidence the record contradicts the Trustee's position: (i) Debtor's schedules and certification in the bankruptcy petition, (ii) the Debtor's testimony at the 341 meeting,[1] (iii) Cathleen Mead's certified statement in her opposition to the sale of the Beach Haven Property[2] and (iv) the Trustee's deposition

---

1. [1] On or about March 11, 2022, Amended Schedules to Debtor's Bankruptcy Petition were filed. (*Fox Certification, Exhibit C*)

2. [2] On February 28, 2022, Cathleen Mead filed an Objection to the Auction of Beach Haven property that included her Certification in which she states that the personal property located in the Beach Haven property belong to her and her children . (*Fox Certification, Exhibit F*).

testimony submitted in the record by the Hospital[3] all supports a reasonable inference that no furnishing and household goods owned by the Debtor at the Beach Heaven Property or anywhere in Ocean County, New Jersey existed or were sufficient to satisfy the Hospital's Judgment.

The Trustee admits: (i) He never obtained any inventory of the furnishing and household goods at the Beach Heaven Property [4] and never objected to Debtor's valuation[5] ; (ii) He never objected to Cathleen's Mead's sworn statement that Brian Mead had no interest in the furnishing and household goods at the Beach Heaven[6] (iii) the Trustee agreed to allow Cathleen Mead to remove any and all the furnishing and household goods located at the Beach Heaven Property[7]; (iv) the Debtor's sworn statement at the 341 meeting established an insignificant value of his marital interest in furnishing and household goods at the Beach Haven Property, which Cathleen Mead asserts belong to her and not Brian Mead; (v) the Trustee acknowledges the Debtor resides in the state of Connecticut and is not a resident of New Jersey; (vi) the Trustee determined the Debtor's possible marital interest the furnishing and household goods at the Beach Heaven Property was insignificant and would not justify the cost for the Trustee to assemble and sell such personal property[8]; (vii) the Trustee never served interrogatories or a deposition notice on the Debtor or Cathleen Mead to locate personal property in New Jersey since his appointment as

---

[3] Transcript of Trustee Deposition -*Exhibit A to Fox Certification*_
[4] Transcript of Trustee Deposition – P35, L13-6 and P36- L3-6, *Exhibit A to Fox Certification*
[5] Transcript of Trustee Deposition – P31, L11-17, *Exhibit A to Fox Certification*
[6] Transcript of Trustee Deposition – P33, L9 o P 35. L6, *Exhibit A to Fox Certification*
[7] Transcript of Trustee Deposition – P35, L2-6 *Exhibit A to Fox Certification*

[8] Transcript of Trustee Deposition – P38, L22 to P39 L2 *Exhibit A to Fox Certification*

9

Trustee in the fall of 2021[9]; and Trustee not aware of any other personal property owned by the Debtor located in New Jersey[10]

It is disingenuous and unreasonable under these fact and circumstances for the Trustee to argue this Court should find the Hospital should have served interrogatories and a deposition notice on the Debtor (while he resides in the state of Connecticut), knowing such action would not result in disclosure of any personal property located in New Jersey. These unique circumstance distinguishes this case from all cases cited in the Trustee's briefs.

Clearly, such unnecessary additional discovery as urged by the Trustee would be a futile effort. In the past 4 years, the Trustee has not located any personal property owned by the Debtor in New Jersey. The Trustee admits his efforts to locate the Debtor's personal property in New Jersey did not include serving any written interrogatories or a deposition notice on the Debtor. The Trustee has not introduced any inventory of personal property from the Beach Haven Property or any other admissible evidence that any personal property was located in New Jersey which would satisfy the Hospital's Judgment. Brian Mead testified at his 341 meeting that the combined value of furnishing and household goods located at the Beach Haven Property, his Connecticut Property and his Florida Property was only $23,000 and as listed in Bankruptcy schedule A/B. [11] Here, the Trustee's own conduct to locate personal property was less than the discovery made by the Hospital. .

The New Jersey courts have not applied a mechanical interpretation of statutes. When interpreting N.J.S.A. 2A:27-1, courts have held "[t]he test is not whether all possible measures

---

[9] Transcript of Trustee Deposition – P40 L1-7 *Exhibit A to Fox Certification*

[10] Transcript of Trustee Deposition – P40, L22 to 25, *Exhibit A to Fox Certification*
[11] Amended Schedules to Debtor's Bankruptcy Petition were filed (*See Exhibit C to Fox Certification*

to locate personalty have been undertaken, but rather has the judgment creditor exerted 'reasonable efforts' in good faith to locate personal property." <u>Borromeo v. DiFlorio, 409 N.J. Super. 124, 137, 976 A.2d 388 (App. Div. 2009)</u>.

When interpreting statutes, such as N.J.S.A. 2A:17-1, courts are required to determine the "intent of the Legislature," <u>Hardy v. Abdul-Matin, 198 N.J. 95, 101, 965 A.2d 1165 (2009)</u>, and must first consider the plain language of the statute because that is the best indicator of legislative intent. <u>DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)</u>. The New Jersey Supreme Court in <u>Perrelli v Patorelle</u>, 206, N.J. 193,200 2011) states:

> However, "where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." <u>Hubbard, supra, 168 N.J. at 392, 774 A.2d 495</u> (quoting <u>Turner v. First Union Nat'l Bank, 162 N.J. 75, 84, 740 A.2d 1081 (1999)</u>); *see also* <u>New Jersey Builders, Owners, & Managers Ass'n. v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972)</u> ("Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter.")

The Trustee's argument requiring the Hospital to engage in more discovery (knowing that such effort would be futile) is disingenuous and inequitable and should not be applied by this Court when interpreting N.J.S.A. 2A:17-1.

## **CONCLUSION**

This Court should find that the Trustee failed to satisfy his burden of proof under his motion for summary judgment. This Court should hold that R. 4:59-1(d)(1), by its plain meaning, did not impose a duty of discovery of personalty on the Hospital to simply levy on the Beach Haven Property. Additionally, upon a review of the admissible evidence in the record and with all reasonable inference in favor of the Hospital, the Hospital exercised a "reasonable effort in good

11

faith" under these unique circumstances to locate personal property of the Debtor prior to the levy on Beach Haven Property. As such, the Trustee's motion for summary judgment must be denied.

Interpreting N.J.S.A. 2A;17-1 to requiring the Hospital to engaged in more discovery (knowing that such effort would be futile) would create a manifestly absurd result, contrary to public policy and the spirit of the law. Rather, the Hospital simply exercised its rights under *N.J.S.A.* 2A:17-39 to levy on the Beach Haven Property without seeking a writ of execution under R. 4:59-1(d)(1). The Hospital, as a levying creditor (August 17, 2021), should be rewarded for its diligence by gaining priority over the Trustee's subsequent hypothetical judgment levying lien under N.J.S.A.2A:17-39, which is superior in time to the Trustee's hypothetical lien (September 23, 2021) under 11 U.S.C. §§ 544 and 545 of the Code. As such, the Hospitals cross- motion for summary judgment must be granted.

The Hospital respectfully requests that this Court (1) deny the Trustee's motion for summary Judgment; (2) grant the Hospital's cross-motion for summary judgment; (3) find that the Hospital holds a valid secured lien against the proceeds from the sale of the Beach Haven Property; and (4) order the Trustee to immediately pay the Hospital the amount of the Judgment, plus taxed costs, together with post-judgment interest at the rate as determined by the New Jersey Rules of Court from the proceeds of the sale of the Beach Haven Property.

                CAPEHART & SCATCHARD, PA
                Attorney for Defendant

Dated: May 12, 2025        */s/ Alan P. Fox*

                Alan P. Fox, Esquire
                8000 Midlantic Drive, Suite 300 S
                Mt. Laurel, New Jersey 08054

(856) 234-6800

Case 24-01547-MEH    Doc 17    Filed 05/12/25    Entered 05/12/25 16:51:57    Desc Main
Document    Page 13 of 13

(856) 234-6800